**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas A. Haviland, | No. CV-15-00611-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| TD Ameritrade Incorporated, | |
| Defendant. | |

Before the court are Plaintiff Douglas A. Haviland's Motion to Confirm FINRA Arbitration Award (Doc. 1) and Defendant TD Ameritrade Inc.'s Motion to Vacate the FINRA Arbitration Award (Doc. 14). For the reasons that follow, Haviland's Motion will be granted in part.

**I.  BACKGROUND**

The following facts are taken from TD Ameritrade's Motion and the sworn Declaration (Doc. 14-2) of its attorney, Miles D. Hart, as well as exhibits attached to that Declaration. In his brief Response (Doc. 22), Haviland does not appear to contest the accuracy of TD Ameritrade's factual assertions. Haviland's Motion levels various allegations at TD Ameritrade and disputes several of TD Ameritrade's facts, but these disagreements are largely irrelevant to the pending motions. Given the posture of this case, the parties have not had the opportunity to exchange discovery. The court will therefore assume that TD Ameritrade's version of events is accurate.

Haviland opened a brokerage account with a predecessor to TD Ameritrade in 2001. (Doc. 14 at 4.) On July 13, 2005, TD Ameritrade executed for Haviland the purchase of 75,000 shares of Bancorp International Group ("Bancorp"), which sold for $0.0026 per share. (*Id.* at 5.) These shares were part of an issuance assigned No. 05968X106 ("X106") by the Committee on Uniform Securities Identification Procedures ("CUSIP"). (*Id.* at 3 & n.2.) TD Ameritrade held the stock in its name for the benefit of Haviland. (*See id.* at 4-5.) Later that summer, on August 16, 2005, the Depository Trust Company issued a "Global Lock" on Bancorp shares in its custody. (*Id.* at 7.) The Depository Trust Company is "the central securities depository and clearing agency in the United States operating under regulatory oversight of the SEC." (*Id.* at 6.) Pursuant to its own rules, which are regulated by the Securities and Exchange Commission, the Depository Trust Company "determine[s] whether to accept a security as an 'eligible security' and when an eligible security ceases to be an eligible security." (*See id.* at 7.) When it imposes a global lock, also known as a "freeze," the Depository Trust Company "discontinue[s] all non-custodial services for a security." (*Id.*) "[Depository Trust Company] participants such as [TD Ameritrade], issuers such as [Bancorp], and owners of issuers' stock are bound by these restrictions. As a broker-dealer, [TD Ameritrade] is required, under FINRA Rule 11310, to use [Depository Trust Company] (and its parent) to clear electronic transactions." (*Id.* (citation omitted).).

The SEC temporarily suspended the trading of Bancorp stock on August 31, 2005. (*Id.* at 8.) The SEC lifted the suspension on September 14, 2005, but on November 3, 2009, it "revoked the registration of all [Bancorp] securities because of [Bancorp's] repeated failure to satisfy its public reporting requirements." (*Id.*) The Global Lock and the revocation both remain in effect. (*Id.* at 7-8.) At some unspecified time "after [Depository Trust Company] imposed the Global Lock," Bancorp issued a second category of stock with CUSIP No. 05968X205 ("X205"). (*Id.* at 3, 8.) "These shares were not registered with the SEC and are not publicly traded." (*Id.* at 8.) In February 2012, Bancorp purported to "' . . . require the mandatory exchange' of all existing

common stock certificates issued under CUSIP X106 for new certificates bearing CUSIP X205." (*Id.*) The Financial Industry Regulatory Authority ("FINRA"), however, did not approve the exchange because "the stock was delisted in 2006 and the SEC revoked the registration of [Bancorp's] stock in 2009." (*Id.*) Accordingly, the Depository Trust Company "could not process the exchange." (*Id.*)

On July 14, 2014, Haviland filed an arbitration claim with FINRA, asserting that in September 2011 he had "made a demand to [TD Ameritrade] to transfer [his] 75,000 [Bancorp] shares into [his] name on the books of [Bancorp] and to deliver a certificate," and that TD Ameritrade had refused in light of the Global Lock. (Doc. 14-2 at 1; Doc. 14-3 at 4.) Haviland asked the arbitrator for an order compelling TD Ameritrade to transfer his Bancorp shares into his name and to deliver "a [Bancorp] stock certificate as proof of [his] registered ownership." (Doc. 14-3 at 3.) The prayer for relief also contained the following request: "If [TD Ameritrade] do[es] not have the shares [it] can either buy-in the seller, or obtain my [Bancorp] shares from another source, or in the alternative, authorize me to buy-in for [TD Ameritrade] with a guarantee I will be reimbursed the purchase price and other costs for doing so." (*Id.*)

TD Ameritrade agreed on July 31, 2014, to submit to arbitration of Haviland's complaint. (*Id.* at 32-33.) The Submission Agreement provides that if the arbitrator issues an award, "a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment." (*Id.* at 32.) In its Answer and Affirmative Defenses, filed with FINRA on September 4, 2014, TD Ameritrade explained that it had already relayed Haviland's request to the Depository Trust Company, which "could not (and cannot) honor [Haviland's] demand as a result of restrictions it (DTC) placed on the security." (*Id.* at 36.) "Since [TD Ameritrade] has no control or authority over [Depository Trust Company]," TD Ameritrade wrote, "it is not able to provide [Haviland] with a certificate." (*Id.* at 37.)

The single arbitrator in the case read the parties' paper submissions but did not conduct a hearing. (Doc. 14 at 9; Doc. 1-1 at 3.) In a March 12, 2015 Award, the arbitrator announced that TD Ameritrade "is liable for and shall pay to [Haviland] $205.00 in compensatory damages" and "must deliver to [Haviland] a physical share certificate for 75,000 Bancorp International Group, Inc. shares registered in [Haviland's] name." (Doc. 1-1 at 3.) The Award does not specify which type of shares—X106 or X205—TD Ameritrade is required to deliver. TD Ameritrade requested a correction from FINRA on March 20, 2015, to clarify the appropriate class of stock. (Doc. 16 at 3-4.) But the time for a ruling from the arbitrator lapsed without any response, and so TD Ameritrade's request was deemed "considered and denied" under FINRA rules on April 9, 2015. (Doc. 14-2 at 6.) That same day, TD Ameritrade paid Haviland the monetary portion of the Award. (*Id.*)

Haviland, a resident of Scottsdale, Arizona, moved to confirm the arbitrator's award in this court on April 6, 2015. (Doc. 1.) TD Ameritrade filed the present Motion on May 15, 2015, asking the court to set aside the arbitrator's Award on the grounds that 1) the Global Lock made it impossible to transfer X106 shares to Haviland and 2) transfer of unregistered X205 shares would violate the Securities Act of 1933.

## II.   LEGAL ANALYSIS

If an arbitration agreement does not specify the court in which a party may apply to confirm the award, "then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. A motion to confirm may also be brought "in any district proper under the general venue statute." *Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195 (2000). At "any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." *See* § 9. The district court may entertain the application as long as subject matter jurisdiction exists, which is not disputed in this case.

Ordinarily, the court's power to vacate, modify, or correct is narrowly circumscribed. Under § 10, "arbitrators 'exceed their powers' . . . not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational' or exhibits a 'manifest disregard of law.'" *Kyocera Corp. v. Prudential-Bache T Servs.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc) (citations omitted). Section 11 similarly "afford[s] an extremely limited review authority." *See id.* at 998. "In sum, the Federal Arbitration Act allows a federal court to correct a technical error, to strike all or a portion of an award pertaining to an issue not at all subject to arbitration, and to vacate an award that evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law." *Id.* at 997-98.

"Nevertheless, the purpose of federal arbitration law is 'to make arbitration agreements as enforceable as other contracts, but not more so.'" *Am. Postal Workers Union v. U.S. Postal Serv.*, 682 F.2d 1280, 1286 (9th Cir. 1982). "It is a general principle of contract law that courts will not enforce contracts requiring the performance of an illegal act." *Id.* Accordingly, although § 9 makes no mention of illegality as a basis for vacatur, modification, or correction, "the courts cannot enforce an arbitrator's award if it requires the performance of an illegal act." *Id.*

Were TD Ameritrade to deliver to Haviland a certificate for 75,000 Bancorp shares, that certificate would have to reflect stock with either CUSIP No. X106 or CUSIP No. X205. Section 5 of the Securities Act of 1933 makes it unlawful to "offer to sell or offer to buy . . . any security, unless a registration statement has been filed as to such security." 15 U.S.C. § 77e(c). It also prohibits selling, or delivering after sale, any unregistered security. *Id.* § 77e(a). Because the X205 shares are not registered with the SEC, and because TD Ameritrade does not have any of those shares in its possession, acquiring X205 shares to transfer to Haviland would require TD Ameritrade to "offer to buy" and then to deliver a security for which no "registration statement has been filed." That is, delivery of a certificate for X205 shares would require "the performance of an

illegal act." *Am. Postal Workers Union*, 682 F.2d at 1286.  To the extent the arbitrator's Award requires delivery of a certificate for X205 shares, it is unenforceable.

TD Ameritrade acknowledges in its Reply (Doc. 24) that the ban on offering to buy unregistered securities does not apply to "any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval."  15 U.S.C. § 77c(a)(10).  If this court determined after a hearing that the exchange of X205 shares for "bona fide outstanding securities, claims or property interests" were "fair," then TD Ameritrade's acquisition of those shares would not qualify as illegal, and the arbitrator's Award could be confirmed.  But Haviland does not mention this provision in his Motion or his Response, and he has not moved for a § 77c(a)(10) fairness hearing.  Indeed, other than his suggestion in the arbitration complaint that TD Ameritrade "buy-in" shares from Bancorp—i.e., apparently a cash transfer, which is not permitted by the plain language of § 77c(a)(10)—Haviland has not even proposed an "exchange" on which this court could conduct a hearing.  Section 77c(a)(10) therefore cannot render an otherwise illegal act valid.

Given the holding in *American Postal Workers Union*, the court can confirm the Award only if it is construed to require TD Ameritrade to deliver a certificate for X106 shares.  TD Ameritrade has already done everything in its power to grant Haviland this portion of the relief awarded by the arbitrator.  Namely, TD Ameritrade has directed the Depository Trust Company to transfer to Haviland a certificate reflecting 75,000 X106 shares in Haviland's name, but the Depository Trust Company has declined to do so.  TD Ameritrade has no power to force such a transfer, and courts cannot order performance of

a condition with which it is impossible to comply. *See Taylor-Edwards Warehouse & Transfer Co. v. Burlington N., Inc.*, 715 F.2d 1330, 1336 (9th Cir. 1983) (recognizing defense to breach of contract where "the thing cannot by any means be effected"). The court will therefore confirm the arbitrator's Award, but only to the extent that TD Ameritrade must continue to make good faith efforts to transfer to Haviland a certificate recognizing ownership in his name of the 75,000 Bancorp X106 shares currently held by the Depository Trust Company. While the Global Lock remains in place, there is nothing more TD Ameritrade can do to effect this transfer. If and when the Global Lock is lifted, however, TD Ameritrade will be required by the Award, and by this Order, to request the transfer of Haviland's X106 shares by the Depository Trust Company. TD Ameritrade is otherwise excused from attempts to comply with the arbitrator's Award.

IT IS THEREFORE ORDERED that Defendant TD Ameritrade Inc.'s Motion to Vacate the FINRA Arbitration Award (Doc. 14) is denied.

IT IS FURTHER ORDERED that Plaintiff Douglas A. Haviland's Motion to Confirm FINRA Arbitration Award (Doc. 1) is granted to the extent, and only to the extent, that TD Ameritrade must continue to make good faith efforts to transfer to Haviland a certificate recognizing ownership in his name of the 75,000 Bancorp X106 shares currently held by the Depository Trust Company.

IT IS FURTHER ORDERED that the Clerk shall enter judgment in favor of Haviland and against TD Ameritrade, confirming the Award to the extent, and only to the

/ / /
/ / /
/ / /

extent, that TD Ameritrade must continue to make good faith efforts to transfer to Haviland a certificate recognizing ownership in his name of the 75,000 Bancorp X106 shares currently held by the Depository Trust Company. The Clerk shall terminate this case.

Dated this 25th day of June, 2015.

Neil V. Wake
United States District Judge