**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas A. Haviland,<br><br>    Plaintiff,<br><br>v.<br><br>TD Ameritrade Incorporated,<br><br>    Defendant. | No. CV-15-00611-PHX-NVW<br><br>**ORDER** |

On June 25, 2015, the court granted Plaintiff Douglas A. Haviland's Motion to Confirm FINRA Arbitration Award (Doc. 1) "to the extent, and only to the extent, that TD Ameritrade must continue to make good faith efforts to transfer to Haviland a certificate recognizing ownership in his name of the 75,000 Bancorp X106 shares currently held by the Depository Trust Company."[1]  (Doc. 29 at 7.) The court's Order assumed, consistent with the parties' briefing, that confirming the Award in full would impermissibly require TD Ameritrade to perform an illegal act, since the Securities and Exchange Commission had revoked the registration of Bancorp's stock in 2009. Section 5 of the Securities Act of 1933 makes it unlawful to "offer to sell or offer to buy . . . any security, unless a registration statement has been filed as to such security," 15 U.S.C. § 77e(c), or to sell, or deliver after sale, any unregistered security, *id.* § 77e(a).

---

[1] For a full account of the prior proceedings in this case, see *Haviland v. TD Ameritrade, Inc.*, No. CV-15-00611-PHX-NVW, 2015 U.S. Dist. LEXIS 83340, 2015 WL 3907117 (D. Ariz. June 25, 2015).

On a Motion for Reconsideration (Doc. 31), however, Haviland attached a copy of an Oklahoma state court order, issued in January 2006, that approved a settlement agreement between Bancorp and two brokers, Capital Growth Financial, L.L.C., and JH Darbie & Co., among others. (*See* Doc. 31-2 at 25-29.) The agreement provided that Bancorp would issue new shares of common stock ("New Shares") to the brokers and stipulated that those shares would be "deemed to be free-trading stock exempt from registration pursuant to Section 3(a)(10) of the 1933 Act, as amended." (*Id.* at 27.) Under that provision, the prohibition on selling and buying unregistered securities does not apply to "any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval." 15 U.S.C. § 77c(a)(10). As the Oklahoma court had invoked § 3(a)(10), it appeared TD Ameritrade could lawfully comply with the arbitrator's Award by delivering to Haviland a certificate recognizing ownership in his name of 75,000 New Shares. This court therefore ordered TD Ameritrade to submit a supplemental brief "explaining why the court should not grant Haviland's Motion for Reconsideration." (Doc. 41 at 3.)

In a Response (Doc. 43) filed on August 7, 2015, TD Ameritrade argues that purchase of any New Shares would violate 15 U.S.C. § 78l(j), which provides, "No member of a national securities exchange, broker, or dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security the registration of which has been and is suspended or revoked." TD Ameritrade contends the SEC "revoked the registration of [Bancorp]" in November 2009, and therefore "any transaction" involving any Bancorp

shares is barred by § 78l(j).  (Doc. 43 at 3.)  In fact, the SEC's November 3, 2009 order merely directs that, "pursuant to Section 12(j) of the Securities Exchange Act of 1934, the registration of each class of *registered* securities of [Bancorp] is hereby REVOKED." (Doc. 14-3 at 25 (italics added).)  That order does not purport to affect any Bancorp shares, such as the New Shares, that are exempt from registration.  And the statutory provision on which the SEC relied does not give the agency power to remove from the market shares issued under the authority of § 3(a)(10).  Instead, it merely empowers the SEC to revoke a registration when such a registration exists.  *See* 15 U.S.C. § 78l(j) ("The Commission is authorized . . . to revoke the registration of a security, if the Commission finds . . . that the issuer of such security has failed to comply with any provision of this title or the rules and regulations thereunder.").  But where, as here, the shares in question are unregistered, § 78l(j) by its terms is inapplicable.

TD Ameritrade next argues that the "settlement presented to the Oklahoma state court for approval called for" the New Shares "to be presented to, and accepted by, the [Depository Trust Company] in exchange for the alleged 'counterfeit' shares of [Bancorp]."  (Doc. 43 at 4.)  But the Depository Trust Company allegedly "refused to accept the share certificates issued pursuant to the Oklahoma state court order."  (*Id.* at 5.)  It is not clear why TD Ameritrade believes this fact absolves it of its duty to comply with the arbitrator's Award.  TD Ameritrade offers no support for the idea that the Depository Trust Company's rejection of the New Shares somehow renders the sale or purchase of those shares illegal.

In any event, TD Ameritrade's brief appears to misstate the record.  The settlement agreement merely requires Bancorp to "take such steps as are reasonably necessary and appropriate to ensure that such New Shares, among other things, shall be: a) Reasonably acceptable to [the Depository Trust Company] for deposit therein."  (Doc. 31-2 at 35.)  The court's order itself makes no mention of the Depository Trust Company. There is no indication that Bancorp failed to comply with this term of the agreement.

Nor is there any reason to think that such failure would strip the New Shares of their exemption from the prohibition on buying or selling unregistered securities.

TD Ameritrade insists that it does not know how or where to purchase New Shares because a "real market" for such shares does not exist. (Doc. 43 at 5-6.) According to TD Ameritrade, "there has been no trading in those, or any other, [Bancorp] shares except for a 30 minute period in 2006." (*Id.* at 5.) One of the brokers to whom the New Shares were issued was allegedly "expelled from the securities industry by order of the SEC in July 2008." (*Id.* at 5-6 n.7.) That TD Ameritrade may have difficulty locating a seller of New Shares, however, does not mean that purchasing such shares and transferring them to Haviland would be either illegal or impossible.

Finally, it is irrelevant that the "Oklahoma state court proceeding is not referenced in the record before the Arbitrator, and . . . was not raised in the underlying arbitration as a basis for relief." (Doc. 43 at 2.) Haviland's request for relief to the arbitrator included a demand that TD Ameritrade "transfer my [Bancorp] ownership which is now registered on [TD Ameritrade's] books into my name on the books of [Bancorp] and deliver to me a [Bancorp] stock certificate as proof of my registered ownership." (Doc. 14-3 at 3.) Nevertheless, the arbitrator's Award ordered only that TD Ameritrade "deliver to Claimant a physical share certificate for 75,000 [Bancorp] shares registered in Claimant's name." (Doc. 1-1 at 3.) The Award did not indicate that TD Ameritrade had to deliver Haviland's previously purchased shares, or that TD Ameritrade would be excused from compliance if those specific shares were not transferrable. When TD Ameritrade asked the arbitrator to clarify which class of stock the Award called for—CUSIP No. 05968X106, like Haviland's original shares, or CUSIP No. 05968X205—the arbitrator did not respond. (Doc. 29 at 4.) The Award therefore appears to contemplate that TD Ameritrade may comply by furnishing Haviland a certificate for shares of a class other than that which he purchased in 2005. As a result, Haviland's failure to mention the New Shares during arbitration does not mean those shares cannot be used to fulfill the Award.

A court's authority to vacate, modify, or correct an arbitration award is "narrowly circumscribed." *Haviland*, 2015 U.S. Dist. LEXIS 83340, at *7, 2015 WL 3907117, at *3. "In sum, the Federal Arbitration Act allows a federal court to correct a technical error, to strike all or a portion of an award pertaining to an issue not at all subject to arbitration, and to vacate an award that evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law." *Id.* at *7-8, 2015 WL 3907117, at *3. An award may also be modified if it calls for the performance of an impossible or illegal act. *Id.* at *8, 11, 2015 WL 3907117, at *3-4. TD Ameritrade has not shown that any such grounds for vacatur, modification, or correction exist in this case.

IT IS THEREFORE ORDERED that the court's June 25, 2015 Order (Doc. 29) and Judgment (Doc. 30) are vacated.

IT IS FURTHER ORDERED that Plaintiff Douglas A. Haviland's Motion for Reconsideration (Doc. 31) is granted. The arbitrator's Award of March 11, 2015, is confirmed in its entirety.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Haviland and against Defendant TD Ameritrade, Inc., confirming the arbitrator's Award of March 11, 2015, in its entirety.

Dated this 10th day of August, 2015.

Neil V. Wake
United States District Judge